# STATEMENT OF FACTS

Your affiant, ████████████, is a Special Agent with the Federal Bureau of Investigation since December 2020 assigned to the Cincinnati Field Office. Currently, I am tasked with investigating criminal activity on the U.S. Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of violations of federal criminal laws. I have participated in multiple investigations of violations of federal law, including interstate threats, illegal manufacture of firearms, and domestic and international terrorism. I have participated in the execution of search warrants, as well as the interview of witnesses and suspects.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

<u>Identification of Joseph Valentour as BOLO 494-AFO</u>

Based on a review of video footage from January 6, 2021, investigators identified an individual who appeared to assault multiple Metropolitan Police Department ("MPD") officers on the Lower West Terrace ("LWT") beginning at approximately 2:04 p.m. That individual, initially identified as BOLO 494-AFO wore a brown coat, light-colored jeans, and distinctive half-glove/half-mitten hand coverings. Open-source researchers refer to BOLO 494-AFO as #WestWanderer. In June 2023, the FBI preliminarily identified the male as Dayton, Ohio resident Joseph Valentour ("VALENTOUR").

Investigators reviewed financial records for VALENTOUR. Several transactions that occurred between January 5, 2021, and January 7, 2021, were identified, consistent with travel to and from the Washington, D.C. metropolitan area. Those charges included hotel and Metro charges in Alexandria, Virginia, and gas stations in Pennsylvania, Maryland, and West Virginia.

In September 2023, a police officer spoke with VALENTOUR at his place of employment in Centerville, Ohio. VALENTOUR provided the officer with his cellular telephone number (937) XXX-XXXX, one of the telephone numbers previously identified through database checks as associated with VALENTOUR. At the FBI's request, the police officer reviewed images of BOLO 494-AFO, including Figures 1-4 shown below. Based on his face-to-face discussion with VALENTOUR, the officer positively identified BOLO 494-AFO as VALENTOUR.



*Figure 1 and 2: Images of VALENTOUR from January 6, 2021, identified by the interviewing officer.*



*Figure 3: Image of VALENTOUR from January 6, 2021, identified by the interviewing officer.*



*Figure 4: Image of VALENTOUR from January 6, 2021, identified by the interviewing officer.*

In addition, I subsequently reviewed two video stills showing VALENTOUR taken from the interviewing officer's body-worn camera (Figures 5-6 below). Based on my review of those video stills and images taken of VALENTOUR on January 6, 2021, during the riot at the U.S. Capitol, I believe they show the same person.



*Figures 5 and 6: Video stills of VALENTOUR from BWC during an interview with a police officer.*

<u>Identification of Jonathan Wayne "Duke" Valentour</u>

Investigators obtained additional information that VALENTOUR's son, Jonathan Duke Valentour ("DUKE"), was present with VALENTOUR at the U.S. Capitol on January 6, 2021. In August 2023, investigators identified photographs of DUKE from publicly available websites (Figure 7 and 8 below) and linked him to telephone number (937) XXX-XXXX.



*Figures 7 and 8: Images of DUKE from publicly available websites.*

Investigators compared Figures 7 and 8 and other known photographs of DUKE, including his Colorado driver's license photograph, with photographs and video stills showing an individual participating in the riot on January 6, 2021, while wearing a blue coat, light colored jeans, dark gloves, a dark backpack, and a red hat that said, "Make America Great Again." Based on that comparison, investigators believe that they are likely the same individual. In addition, investigators identified multiple photographs and videos showing VALENTOUR and DUKE together at the U.S. Capitol, including Figures 9 and 10 below.



*Figures 9 and 10: Video stills of DUKE and VALENTOUR together at the U.S. Capitol on January 6, 2021.*

In May 2024, investigators spoke with an individual (INDIVIDUAL 1) who works at the same company where DUKE is currently employed. INDIVIDUAL 1 was familiar with DUKE and provided investigators with an employee photograph of DUKE (Figure 11 below).



*Figure 11: Employee photograph of DUKE provided by INDIVIDUAL 1.*

In June 2024, investigators met with INDIVIDUAL 1 in person and presented INDIVIDUAL 1 with a series of photographs (including Figures 12-15 below) depicting the person described above as DUKE at the grounds of the U.S. Capitol Building in Washington, D.C. INDIVIDUAL 1 positively identified the individual in the photographs as DUKE.



*Figure 12: Image of DUKE from January 6, 2021, identified by INDIVIDUAL 1.*



*Figure 13: Image of DUKE from January 6, 2021, identified by INDIVIDUAL 1.*



*Figure 14: Image of DUKE from January 6, 2021, identified by INDIVIDUAL 1.*



*Figure 15: Image of DUKE from January 6, 2021, identified by INDIVIDUAL 1.*

Conduct of VALENTOUR and DUKE at the U.S. Capitol on January 6, 2021

At approximately 2:04 p.m., an MPD officer's body-worn camera (BWC) captured VALENTOUR approaching the police line on the LWT by appearing to purposefully back into it. After VALENTOUR made contact with the officer, and the officer tried to push him back (Figure 16 below), other rioters grabbed the officer's baton and dragged him into the crowd.



*Figure 16: Video still of VALENTOUR pushing backwards into a Capitol police officer.*

Shortly thereafter, amid the ensuing chaos, additional BWC captured VALENTOUR pushing against the police line. He touched an unknown police officer's shield multiple times and appeared to be working with other rioters to attempt to disarm the officer (Figures 17-18 below). VALENTOUR's efforts were eventually successful and the officer fell down stairs as a result.



*Figures 17-18: Video stills of VALENTOUR attempting to remove a police officer's shield*

Another officer went to assist the fallen USCP officer, VALENTOUR lowered his shoulder to hip height and forcibly used his body weight to charge at and push the assisting officer below the officer's center of gravity, thereby impeding the assisting officer's forward movement. VALENTOUR's efforts were successful as he moved the assisting officer away from the other officers. Additional BWC showed VALENTOUR pushing the police line and make purposeful contact with yet another officer (Figures 19-20 below). VALENTOUR then disengaged and moved into the crowd of rioters.



*Figures 19 and 20: Video stills of VALENTOUR assaulting a police officer and making physical contact with the officer as he did so.*

BWC footage also showed DUKE, wearing a blue coat, light colored jeans, a red "Make America Great Again" hat, dark colored gloves and a dark colored backpack in roughly the same area as his father. At approximately 2:04 p.m., DUKE charged through other rioters toward a police line. As Duke approached officers, DUKE interfered with and resisted officers along the police line by forcibly pushing the rioters in front of him into police. Duke simultaneously attempted to grab and interfere with the officers at this location. Officers successfully repelled DUKE's actions and pushed him back down the steps.



*Figure 21: Duke attempting to charge the police line.*



*Figure 22: Duke attempting to move past rioters between him and the police line.*



*Figures 23: DUKE pushing into officers with other rioters.*

Shortly thereafter, DUKE ran back up the stairs behind another rioter (who was carrying what appeared to be a police shield). Duke appeared to use this rioter for protection as he, again, attempted to interfere with officers along the police line by pushing this rioter into the officers.



*Figure 24: Duke charging the police line behind another rioter.*



*Figure 25: DUKE pushing against another rioter as he moved toward police.*



*Figures 26: DUKE pushing a rioter into police.*

A nearby police officer deployed pepper spray in DUKE's direction, and DUKE quickly retreated back down the stairs into the mob.



*Figure 27: A video still showing an officer deploying pepper spray in DUKE's direction.*



*Figure 28: A photograph posted to Instagram by a freelance photographer showing Duke after being pepper sprayed.*

Based on the foregoing, your affiant submits that there is probable cause to believe that VALENTOUR and DUKE violated 18 U.S.C. § 1752(a)(1), (2), and (4), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do so; (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; and (4) knowingly engage in any act of physical violence against any person or property in any restricted building or grounds; or attempt or conspire to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that VALENTOUR and DUKE violated 40 U.S.C. § 5104(e)(2)(D) and (F), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress, and (F) engage in an act of physical violence in the Grounds or any of the Capitol Buildings;.

Your affiant submits there is probable cause to believe that VALENTOUR and DUKE violated 18 U.S.C. 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Secret Service's protection of the Vice President and his family and the Capitol Police's protection of the U.S. Capitol.

Your affiant submits that there is probable cause to believe that VALENTOUR and DUKE violated 18 U.S.C. § 111(a)(1), which makes it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in section 1114 of Title 18 while engaged in or on account of the performance of official duties, where such acts involve physical contact with the victim or the intent to commit another felony. Persons designated within section 1114 of Title 18 include federal officers such as USCP officers and include any person assisting an officer or employee of the United States in the performance of their official duties.



Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 26th day of December 2024.

_____
HONORABLE G. MICHAEL HARVEY
U.S. MAGISTRATE JUDGE